**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

SEP 1 3 2018

Clerk, U.S. District and
Bankruptcy Courts

| | |
|---|---|
| DEBORAH K. PUESCHEL, | |
| *Plaintiff,* | |
| v. | Civil Action No. 17-cv-1279 (DLF) |
| ELAINE CHAO, in her Official Capacity as Secretary, Department of Transportation, *et al.*, | |
| *Defendants.* | |

**MEMORANDUM OPINION**

Deborah Pueschel engaged in a long string of employment-related disputes with her employer, the Federal Aviation Administration (FAA), and began receiving full-time disability benefits for work-related injuries from the Office of Worker Compensation (OWCP) in 1998. She later decided to run for Congress. When FAA found out, it contacted OWCP and said Pueschel's campaign activities demonstrated an ability to work that was inconsistent with the full-time disability benefits she was receiving. OWCP reduced Pueschel's benefits accordingly and cleared her for full-time work. Pueschel then wrote FAA to request a job, but never received one. Now, she brings these Title VII and Rehabilitation Act claims against FAA for retaliation and disability discrimination, asserting that FAA retaliated against her by encouraging OWCP to reduce her benefits and that FAA discriminated against her by not giving her a job. Pueschel also brings First Amendment claims against both FAA and OWCP, asserting that they violated her "right to run for Congress without penalty" by taking her campaign activities into account in reducing her benefits. Compl. ¶ 52, Dkt. 1 at 10. Before the Court is defendants' joint Motion to

Dismiss under Rule 12(b)(1) and Rule 12(b)6) of the Federal Rules of Civil Procedure.   Dkt. 15-1 (redacted).   For the reasons that follow, the Court will grant the motion.

## I. BACKGROUND[1]

Pueschel began working for FAA as an Air Traffic Controller in 1974.   Compl. ¶ 6.   In 1980, she filed an EEO complaint alleging a pattern of sexual harassment by her male colleagues.   *Id.* ¶ 10.   In 1981, her disputes with FAA began to intensify.   First, she was injured at work and filed a claim for worker compensation with OWCP.   *Id.* ¶ 12.   Next, she filed a federal lawsuit alleging sexual harassment and reprisal.   *Id.* ¶ 14.   After that, she called in sick due to back pain on the same day as an illegal air traffic controllers' strike.   *Id.* ¶ 16.   FAA assumed that Pueschel had participated in the strike, so it fired her and challenged her OWCP claim.   *Id.*

Pueschel lost her first round of sexual-harassment litigation in federal court but obtained a reversal from the Fourth Circuit in 1983.   *Id.* ¶¶ 18, 19.[2]   Three months later, she convinced the U.S. Merit Systems Protection Board to reverse her termination.   *Id.* ¶ 20.   Things between Pueschel and FAA went smoothly for the next seven years.   But Pueschel filed additional EEO complaints against FAA in 1990, 1992, 1997, and 2001.   *Id.* ¶ 21.   Meanwhile, Pueschel suffered an anxiety attack on the job in 1994 and never returned to work.   *Id.* ¶ 22.   She requested disability benefits for work-related anxiety and physical injuries arising from the incident, which OWCP granted in 1998.   *Id.* ¶ 23.   In 1999, FAA terminated Pueschel again—this time because

---

[1] The facts here are recited as alleged in Pueschel's Complaint and are assumed true, as they must be in considering a motion to dismiss.   *See Ctr. for Responsible Sci. v. Gottlieb*, 311 F. Supp. 3d 5, 8 (D.D.C. 2018).

[2] *See Katz v. Dole*, 709 F.2d 251 (4th Cir. 1983).

she was no longer able to work as an air traffic controller. *Id.* ¶ 24. She unsuccessfully appealed her termination. *Id.*

In 2000, Pueschel set her sights on Congress. *Id.* ¶ 27. She ran for the House of Representatives in 2000–2004 and again in 2012–2016. *Id.* Sometime in 2012, FAA began questioning whether Pueschel's campaign activities demonstrated an ability to work that was inconsistent with the full-time OWCP benefits she was still receiving. *Id.* ¶ 28. On October 9, 2015, FAA sent a letter to OWCP stating that Pueschel "demonstrated, and continues to demonstrate, the ability to run for elective office" and that her campaigning activities "disprove[d]" the conclusion that she was "permanently disabled" and likely not "able to work in any capacity." *Id.* ¶ 30. In January 2016, OWCP reduced Pueschel's disability benefits on the grounds she was then capable of working full time as a "customer service representative." *Id.* ¶ 31. In March 2016, Pueschel complained to an EEO counselor about what she considered FAA's "efforts to deprive her of her disability benefits." *Id.* ¶ 32.

In April 2016, Pueschel sent a letter to FAA—specifically, to Margaret Gilligan, the Associate Administrator for Aviation Safety, Pl.'s Opp'n Ex. 4, Dkt. 21-4 at 1[3]—explaining that she had been cleared for full-time work and was requesting a position in the FAA Historian's office, Compl. ¶ 33. Gilligan wrote back that she was "unable to respond to [Pueschel's] request as this is a matter to be addressed by the Air Traffic Organization and the Office of Human

---

[3] Because Pueschel incorporated her letter to FAA in her complaint by reference, the Court may consider plaintiff's copy of that letter on a motion to dismiss. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) ("In determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice.").

Resources." Pl. Opp'n Ex. 4, at 3; *see also* Compl. ¶ 34. Pueschel never heard from FAA again regarding her request. Compl. ¶ 34.

On July 29, 2016, Pueschel initiated the EEO complaint process against FAA, which culminated in a final EEOC decision rejecting her claims on April 3, 2017. *Id.* ¶¶ 35–42. She timely filed this suit within 90 days of receiving that decision. *Id.* ¶ 43; *see also* 42 U.S.C. § 2000e-16(c).

Pueschel brings count I against FAA[4] for reprisal under the Rehabilitation Act and Title VII. Compl. ¶¶ 44–46. She brings count II against FAA for disability discrimination under the Rehabilitation Act and the Americans with Disabilities Act (ADA). *Id.* ¶¶ 47–49. And she brings count III against both FAA and OWCP[5] for violating her right to run for Congress without penalty under the First Amendment. *Id.* ¶¶ 50–52.

For relief, Pueschel seeks: findings consistent with all three Counts; $300,000 in compensatory damages; a position with FAA retroactive to her April 9, 2016 request for employment; a remand of OWCP's decision reducing her disability benefits with instructions to recalculate them without regard for her candidacy for the House of Representatives; and reasonable attorneys' fees and expenses. *Id.* at 11. In response to plaintiff's complaint, defendants filed this joint Motion to Dismiss for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted.

---

[4] As required by 42 U.S.C. § 2000e-16(c), plaintiff formally names the Secretary of Transportation, Elaine Chao, in her official capacity as the head of Transportation, which includes FAA. For simplicity, the Court will refer to "FAA."

[5] Plaintiff formally names the Department of Labor, which includes OWCP. For simplicity, the Court will refer to "OWCP."

## II.  LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action or claim when the court lacks subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A motion for dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction."  *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  Federal district courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Thus, "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence."  *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

"When ruling on a Rule 12(b)(1) motion, the court must treat the plaintiff's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (internal quotation marks omitted).  Those factual allegations, however, receive "closer scrutiny" than they would in the Rule 12(b)(6) context.  *Id.*  Also, unlike when evaluating a Rule 12(b)(6) motion, a court may consider documents outside the pleadings to evaluate whether it has jurisdiction.  *See Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  If the court determines that it lacks jurisdiction, the court must dismiss the claim or action.  Fed. R. Civ. P. 12(b)(1), 12(h)(3).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  A complaint alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).  The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  An "unadorned, the-defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. ANALYSIS

### A.    Plaintiff's Reprisal Claim Against FAA

Plaintiff brings a claim for reprisal under the Rehabilitation Act and Title VII.  But Defendants argue that another statute—the Federal Employee's Compensation Act (FECA)— prevents that claim from proceeding.  FECA governs OWCP benefits and provides federal employees with an exclusive remedy against the United States for work-related injuries. *See* 5 U.S.C. § 8116(c).  Section 8128(b) of that Act allows the Secretary of Labor to "end, decrease,

6

or increase" worker compensation "previously awarded." *Id.* § 8128(a). And it provides that the decision of the Secretary of Labor—or its designees, such as OWCP—is "final and conclusive for all purposes and with respect to all questions of law and fact" and "*not subject to review . . . by a court* by mandamus or otherwise." *Id.* § 8128(b) (emphasis added). Unless an exception applies, § 8128(b) operates to divest federal courts of subject-matter jurisdiction over OWCP benefit decisions. *See, e.g., Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 779 & n.13 (1985) (listing § 8128(b) as an example of "Congress intend[ing] to bar judicial review altogether"); *Gallucci v. Chao*, 374 F. Supp. 2d 121, 128 (D.D.C. 2005) (finding no "subject matter jurisdiction because federal question jurisdiction is precluded by 5 U.S.C. § 8128(b)"), *aff'd*, No. 05-5280, 2006 WL 3018055 (D.C. Cir. Mar. 2, 2006).

    Because the Court is powerless to review OWCP's decision directly, it cannot do so indirectly by fashioning relief under the Rehabilitation Act and Title VII.[6] In determining where FECA ends and Title VII and the Rehabilitation Act may begin, courts distinguish between *tort* injuries—which are the exclusive province of FECA—and *discrimination* injuries—which are not. *See Prescott-Harris v. Fanning*, No. 15-1716, 2016 WL 7223276, at *5 (D.D.C. Dec. 12, 2016) (distinguishing between "work-related injuries" and "claims of discrimination, which are different causes of action aimed at redressing different kinds of harms"). Although FECA generally does not bar discrimination claims, *see Williams v. Tapella*, 658 F. Supp. 2d 204, 210–11 (D.D.C. 2009) (collecting cases), "[a] frustrated FECA claimant cannot secure judicial review of a FECA compensation decision by claiming that the Rehabilitation Act entitles her to [relief] . . . when the claim is predicated upon the same illness or injury that gave rise to the Department

---

[6] Plaintiff makes no argument to the contrary; she argues only that § 8128(b) does not bar her *constitutional* claims. *Id.* at 12–17.

of Labor's initial [FECA] decision." *Prescott-Harris*, 2016 WL 7223276 at *5 (third alteration in original) (quoting *Meester v. Runyon*, 149 F.3d 855, 857 (8th Cir. 1998), *cert. denied*, *Meester v. Henderson*, 526 U.S. 1144 (1999)); *see also Stubler v. Runyon*, 892 F. Supp. 228, 230 (W.D. Mo. 1994) (finding Rehabilitation Act claim barred where plaintiff "in fact seeks recovery for the same physical condition for which she has received and continues to receive compensation under [FECA]"), *aff'd*, 56 F.3d 69 (8th Cir. 1995) (unpublished table decision). Where Rehabilitation Act claims "have no effect on the Secretary of Labor's determination of factual and legal issues pertaining to plaintiff's FECA claim or eligibility for worker's compensation benefits[,] . . . FECA does not bar" them. *Williams*, 658 F. Supp. 2d at 210. But where the plaintiff "is essentially asking [the court] to hold that the Department of Labor was wrong . . . [s]uch a holding would contravene FECA's prohibition against judicial review of compensation decisions." *Meester*, 149 F.3d at 857. In such a case, the court "will not allow [the plaintiff] to use the Rehabilitation Act to circumvent Congress's intent." *Id.*

Here, Pueschel's sole reprisal theory is that FAA "succeeded in reducing [her] disability/worker compensation benefits by repeatedly complaining to OWCP that [she] was no longer disabled." Compl. ¶ 45. Aside from her initial workplace injury in 1994, however, she does not allege any new "illness or injury" resulting from FAA's complaint to OWCP. Rather, she claims FAA's actions caused OWCP to determine the compensation owed for her *existing* injuries incorrectly. She seeks compensatory damages from FAA calculated to offset OWCP's reduction in disability benefits. And she also asks the Court to remand the OWCP's decision for reconsideration. In substance, Pueschel's claim is a challenge to OWCP's determination, which is both exclusive and unreviewable. Because plaintiff's claim amounts to an attempt to relitigate

8

OWCP's FECA determination under the banner of the Rehabilitation Act and Title VII, FECA precludes her suit.  The Court must dismiss count I.[7]

### B.    Plaintiff's Discrimination Claim Against FAA

Pueschel also alleges that FAA discriminated against her on account of her disability when it failed to re-hire her after she had been cleared for full-time work.  Because Pueschel's discrimination claim focuses on a new discriminatory injury unrelated to the workplace injuries considered by OWCP, it is not barred by 5 U.S.C. § 8128(b).

The Rehabilitation Act applies the substantive discrimination standards of the Americans with Disabilities Act (ADA) to executive agencies, *see* 29 U.S.C. §§ 791(f), 794(a), 794(d), and it makes Title VII rights, remedies, and procedures available to federal agency "employee[s] or applicant[s] for employment," 29 U.S.C. § 794a(a)(1).  Pueschel does not claim to be an "employee" for purposes of her discrimination claim, so she must be an "applicant" in order to bring her claim under the Rehabilitation Act.  But she is not.

An authoritative dictionary published near the time the relevant provisions were enacted defines "applicant" as "one who makes a usu[ally] formal request esp[ecially] for something of benefit to himself."  Webster's Third New International Dictionary 105 (1961).  But the parties point to only one case interpreting the term "applicant for employment" as it appears in Title VII and the Rehabilitation Act.  In *Hockett v. Administrator of Veterans Affairs*, the court noted the absence of any relevant statutory definition, legislative history, or precedent and gave the term "applicant for employment" a "reasonable construction."  385 F. Supp. 1106, 1111 (N.D. Ohio

---

[7] The Court does not reach defendants' argument that plaintiff has failed to allege an employment relationship with FAA under the Rehabilitation Act and Title VII.  *See* Defs.' Mot. 8–9, Dkt. 15-1 at 10–11.

1974).[8] Although the court did not consider contemporaneous dictionary definitions, it echoed the formality contemplated by *Webster's Third* and "concluded that 'applicant for employment' . . . contemplates a person who has filed a written application for a particular position with a government agency, or who has sought to file such an application but has been denied the opportunity." *Id.* The court "further concluded that the written application need not necessarily be on a form supplied by the agency, as long as the writing submitted by the applicant particularizes the position sought and supplies the information requested in the agency's application form." *Id.*

The court provided several reasons for its construction. First, Title VII "placed a new administrative responsibility on all federal agencies." *Id.* at 1112. Because Title VII's "complaint procedure is complex and expensive, the triggering event which gives individuals the power to invoke it should be as concrete and specific as possible." *Id.* Second, Title VII is limited "by its own terms only to 'personnel actions' of federal agencies" and thus "contemplates some official act or procedure," which "[i]n the context of hiring . . . must mean the actual rejection of an application." *Id.* Third, "the submission of a written application is an act which is entirely within the control of the individual who desires to apply. Therefore, requiring such an application will not place a new or significant burden upon an individual who wishes to invoke [Title VII's] grievance procedure." *Id.*

The Court finds *Hockett*'s reasoning persuasive and adds only that the written application must also be submitted to a person or office responsible for receiving such applications. Without that requirement, a written "application" could be sent to any one of hundreds or thousands of

---

[8] The court in *Hockett* interpreted the term as it appears in a parallel Title VII provision incorporated by reference in the Rehabilitation Act. *See* 29 U.S.C. § 794a(a) (Rehabilitation Act); 42 U.S.C. § 2000e-16 (Title VII).

agency employees—or, worse, to unattended mailboxes or email accounts—and expose an agency to litigation simply for failing to discover it. That approach would not make the "triggering event" for Title VII grievance procedures "as concrete and specific as possible." *Id.* Nor would it focus agency responsibility on an "official act or procedure." *Id.* Moreover, submitting a written application to the person or office responsible for processing applications "is an act which is entirely within the control of the individual who desires to apply" and thus would "not place a new or significant burden upon an individual who wishes to invoke [Title VII's] grievance procedure." *Id.*

Here, Pueschel bases her standing as an "applicant" on one letter that she sent to the Associate Administrator for Aviation Safety, Margaret Gilligan. *See* Pl.'s Opp'n, Dkt. 20-1 at 19–20 (redacted); Pl.'s Opp'n Ex. 4, at 1–2. In that letter, plaintiff explained that Gilligan was the "lead attorney" on her case before the Merit Systems Protection Board thirteen years prior. Pl.'s Opp'n Ex. 4, at 1. She then recapped her disputes with the FAA and requested a position as an FAA Historian. *Id.* at 1–2. Gilligan sent a letter in return stating she was "unable to respond to [plaintiff's] request as this is a matter to be addressed by the Air Traffic Organization and the Office of Human Resources." *Id.* at 3.

Submitting a letter to an employee who does not handle employment-related requests does not make Pueschel an "applicant" with respect to FAA. She merely sent a letter to an individual FAA employee with whom she was familiar. Moreover, Gilligan did not actually reject Pueschel's request for employment; she merely directed her to the organization and office responsible for handling employment-related requests. Because Pueschel did not submit a written application to the office responsible for receiving applications for employment, she was

11

not an "applicant" within the meaning of Title VII and the Rehabilitation Act. The Court therefore must dismiss count II.

### C.   Plaintiff's First Amendment Claims

Finally, Pueschel alleges that both FAA and OWCP violated her First Amendment rights: FAA by informing OWCP of her candidacy for Congress; and OWCP by considering that candidacy in determining her disability benefits. As a threshold matter, neither 5 U.S.C. § 8128(b) nor sovereign immunity deprive this Court of jurisdiction to consider those claims.

Defendants do not dispute that § 8128(b) permits judicial review of plaintiff's constitutional—as opposed to statutory—claims. Defs.' Reply, Dkt. 23 at 6–7. But even if an agency "does not contest that the court has jurisdiction to review substantial constitutional claims, the court must make its own determination of its jurisdiction." *Lepre v. Dep't of Labor*, 275 F.3d 59, 64 (D.C. Cir. 2001).

In *Lepre*, the D.C. Circuit held that § 8128(b) did not bar judicial review of a due process challenge to the procedures used by OWCP in calculating the plaintiff's benefits. *Id.* at 68. In reaching that conclusion, it considered the text of § 8128(b), relevant Supreme Court precedent, and the fact that "[w]ithout exception, every other circuit to consider the scope of § 8128(b) has concluded that it does not bar judicial review of constitutional claims." *Id.* Since *Lepre*, courts in this Circuit have recognized that "[t]he general finality of administrative adjudications set out in § 8128(b) 'does not bar judicial review of constitutional claims.'" *Hall v. Dep't of Labor*, 289 F. Supp. 3d 93, 99 (D.D.C. 2018) (quoting *Lepre*, 275 F.3d at 67–68), *appeal filed*, No. 18-5100 (D.C. Cir. Apr. 12, 2018); *see also Gallucci*, 374 F. Supp. 2d at 125 ("It is well established that this court has subject matter jurisdiction to review a decision made under FECA if there has been a constitutional violation."). Following *Lepre* and other courts, the Court concludes that § 8128(b) does not deprive this Court of jurisdiction over Count III.

Even though the Court is not deprived of jurisdiction by § 8128(b), defendants argue that the Court lacks jurisdiction for a different reason: sovereign immunity. *See* Defs.' Mot. 18. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1995). And sovereign immunity is "jurisdictional in nature." *Id.*; *see also id.* ("[T]he terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." (internal quotation marks and alteration omitted)).

The Administrative Procedure Act (APA), however, waives the Federal Government's sovereign immunity with respect to suits challenging the action or inaction of a federal agency, so long as the plaintiff does not seek monetary damages. 5 U.S.C. § 702. And its waiver "applies to any suit whether under the APA or not." *Chamber of Commerce of the U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996).

Thus, the APA's waiver of sovereign immunity covers constitutional challenges to OWCP determinations to the extent plaintiff "seek[s] an order that the Office of Workers' Compensation redetermine his entitlement [to benefits]." *Czerkies v. Dep't of Labor*, 73 F.3d 1435, 1438 (7th Cir. 1996) (en banc). That is precisely what plaintiff seeks here. She "has specifically limited her prayer on Count 3" to a "[r]emand [of] OWCP's decision reducing [her] worker compensation benefits with instructions to redecide the issue without regard for Plaintiff's candidacy for Congress." Pl.'s Opp'n 17 (quoting Compl. 11). Because plaintiff does not seek monetary relief but only "a direction that the [OWCP] process h[er] claim in conformity with [the Constitution]," *Czerkies*, 73 F.3d at 1438, the APA's waiver of sovereign immunity extends to her claim.

1.   Standing as to FAA

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560.  To demonstrate standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Because plaintiff's First Amendment claim against FAA falters at step three—redressability—it must be dismissed.

As discussed, plaintiff explicitly limits her prayer for relief on Count III to remanding *the OWCP*'s decision, with instructions *to the OWCP* to reevaluate her disability benefits.  But such a remand-with-instructions would in no way bind *FAA* as a third party.  Without a request for judicial relief regarding FAA, a finding that FAA "violated Plaintiff's First Amendment right" in the abstract, Compl. 11, would amount to an advisory opinion prohibited by Article III, *see Am. Freedom Def. Initiative v. Wash. Metro. Area Transit Auth., WMATA*, No. 17-7059, 2018 WL 4000492, at *3 (D.C. Cir. Aug. 17, 2018) ("[A] federal court has no power to render advisory opinions or decide questions that cannot affect the rights of litigants in the case before them.").  The Court must therefore dismiss Count III as to defendant FAA.

2.   Failure to State a Claim as to OWCP

Defendants argue that no right to run for office without penalty exists and that, if one does, it was not violated here. Defs.' Reply 7–9.  The Court agrees with defendants' latter argument.

The D.C. Circuit has recognized that the "right to seek political office . . . is undeniable, though the Constitution and the Supreme Court's cases in the area do not pinpoint the precise grounds on which it rests." *Branch v. F.C.C.*, 824 F.2d 37, 47 (D.C. Cir. 1987).  In *Branch*, a

television reporter challenged an FCC rule that required the station he worked for to give his

political opponents "equal time" on the air if he chose to run for office. *Id.* at 39. The frequency

of the reporter's broadcasts made doing so impracticable, so the station told the reporter he

would have to take an unpaid leave of absence during the campaign, with no guarantee of

reinstatement. *Id.* The reporter thus had to choose between his job and running for office.

Nevertheless, the court upheld the regulation and found that the "right to seek political office"

was "not implicated." *Id.* at 47–48. It reasoned that the rule did not "impose[] an undue burden

on [the reporter's] ability to run for office" because "nobody has ever thought that a candidate

has a right to run for office and at the same time to avoid all personal sacrifices." *Id.* at 48.

"Even if the practicalities of campaigning for office are put to one side," the court noted, "many

people find it necessary to choose between their jobs and their candidacies." *Id.* The court

observed that the Hatch Act "requires government employees to resign from work if they wish to

run for certain political offices" and imposes "many more intrusive restrictions as well," yet the

Supreme Court had upheld that Act, and similar state restrictions, against constitutional

challenge. *Id.* (citing *Clements v. Fashing*, 457 U.S. 957 (1982); *U.S. Civil Serv. Comm'n v.*

*Ass'n of Letter Carriers*, 413 U.S. 548 (1973); *United Pub. Workers v. Mitchell*, 330 U.S. 75

(1947)).

Even if OWCP reduced Pueschel's disability benefits based on her candidacy—a fact

defendants vigorously dispute, *see* Defs.' Reply 7—in doing so, OWCP imposed no more

significant burden than the equal time rule in *Branch*. There, the plaintiff had to choose between

his job and running for office. Here, Pueschel did not lose her disability benefits entirely

because she ran for office. She experienced only a partial reduction in compensation. But just as

"nobody has ever thought that a candidate has a right to run for office and at the same time to

avoid all personal sacrifices," *Branch*, 824 F.2d at 48, nobody has ever thought that a candidate has a right to run for office *and at the same time to receive full-time disability benefits*. And the fact Pueschel may have had to choose between her disability benefits and her candidacy does not differ in kind from the fact "many people find it necessary to choose between their jobs and their candidacies." *Id.*

Indeed, this case is even simpler than *Branch*. There, the plaintiff's candidacy *directly* impacted his employment. Here, however, Pueschel's candidacy played at most an indirect role in OWCP's reduction. *See* Pl.'s Opp'n. 25 (acknowledging that "OWCP's decision did not directly concern the First Amendment"). Pueschel does not allege that her candidacy alone triggered the reduction. Rather, she argues that OWCP's "citation of her campaign activities as evidence to support the reduction" amounted to an unconstitutional "burden." Pl.'s Opp'n 22. Because having one's candidacy considered as one factor in reducing disability benefits is no more significant than the burden of direct job loss upheld in *Branch*, plaintiff's "right to seek political office" is "not implicated." 824 F.2d at 47–48.

It is important to note what plaintiff does not allege. She does not claim that OWCP reduced her benefits based on the viewpoint or content expressed in her campaign. Nor does she claim that OWCP punished her for associating with a particular party or that OWCP purposefully retaliated or discriminated against her because of her candidacy—for political reasons, professional reasons, or otherwise. Rather, she argues her right to run for office was impermissibly burdened by OWCP's benefit reduction. Finding that theory foreclosed by D.C. Circuit precedent, the Court will dismiss what remains of count III.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion and dismisses counts I, II, and III. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

Date: September 13, 2018

17